Joan M. GOODSHIP, Plaintiff,

v.

UNIVERSITY OF RICHMOND,
Defendant.

Civ. A. No. 3:93CV648.

United States District Court,
E.D. Virginia,
Richmond Division.

April 8, 1994.

Carolyn P. Carpenter, Eileen N. Wagner, Carpenter, Woodward & Wagner, Richmond, VA, for plaintiff.

Gilbert E. Schill, James Patrick McElligott, Jr., Rodney A. Satterwhite, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendant.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on cross motions for summary judgment. The dispute arises from the decision of the University of Richmond ("University") to deny tenure to Joan M. Goodship ("Goodship") and to not renew her teaching contract. Goodship claims that the University discriminated against her on the basis of age and breached the terms of their contract. Goodship has moved to voluntarily dismiss without prejudice claims under Title VII of gender discrimination and retaliation, and the University does not oppose the motion. For reasons given below, the Court will grant the University's motion for summary judgment, and will grant Goodship's motion to voluntarily dismiss her Title VII claims.

The University hired Goodship in 1987 as an assistant professor in the Department of Education. At the time of her hiring, Goodship's future supervisor, Bruce Cobbs, made a note in her file as follows: "Goodship will be *61* at tenure time = morally obligated to tenure—do we want this?" Another note entered into Goodship's file at this time reports a comment by Elaine Yurek, who was to become Department Head in 1990. The note reads: "Elaine = Goodships [sic] limited research——= does not want to be held responsible = (clarify) but will assist."

Goodship was given a series of one-year contracts, in accordance with standard University procedure. She received positive performance reviews from 1988 through 1992, including reviews by Cobbs. In 1990 David Leary, Dean of the Faculty of Arts and Sciences, cautioned Goodship that she needed to get research published in notable journals. Goodship had an article accepted for publication in 1991 and again in 1992.

Goodship prepared and submitted her tenure application in 1992. During a multi-layer formal review process, her application received many negative comments, principally regarding the quality of her scholarship and research. Defendant's Memorandum in Support, Bowen Affid., Exh. 3, 6–12, 14. Among her departmental peers, three recommended her for tenure and one did not. Her application then went to the school-wide tenure committee. The committee did not recommend tenure, nor did any individual committee member. Next, the Dean and Provost reviewed her portfolio, and neither recommended tenure. Finally, the University President received the portfolio and conveyed his recommendation of no tenure to the Board of Trustees. The Faculty Handbook states that if a faculty member is denied tenure, his or her teaching contract will not be renewed past the following academic year. Memorandum of University of Richmond in support, Bowen Affid., Exh. 15.

On April 20, 1993, University Provost Zeddie Brown notified Goodship by telephone that she would not receive tenure, and that her teaching contract would not be renewed past the 1993–94 academic year. Goodship received written notice of the denial of tenure and non-renewal of her contract.

During the time of Goodship's tenure review, the University was fostering an early retirement program. Goodship contends that the climate of the University promoted a "youth culture" and supports her contention with affidavits regarding overheard comments and impressions of University pressure on older faculty.

■ The Fourth Circuit set forth the process for evaluating age discrimination claims in *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230 (1982). The substantive elements of the claim are: (1) that an employee covered by the Age Discrimination in Employment Act (ADEA); (2) receives an unfavorable employment action by an employer covered by the ADEA; and (3) age was a determining factor in the action in the sense that but for a motive to discriminate, the employer would not have taken the action. *Id.* at 238.

■ The third element, discriminatory motive, can be proved in either of two ways: by direct or circumstantial evidence of discriminatory motive; or by a presumption-

based, alternative proof scheme. *Id.* at 239; *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 849 (4th Cir.1988). Under the latter method, when the elements of a prima facie case are established, the plaintiff creates a rebuttable presumption that the defendant wrongfully discriminated against her, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking unfavorable action against the plaintiff. *Goldberg,* 836 F.2d at 849. To establish a prima facie case of discrimination, the plaintiff must produce evidence to establish the following four elements: (1) She was in a protected age group; (2) She was demoted or discharged; (3) She was performing in accordance with legitimate expectations; and (4) After the demotion or discharge the employer replaced her with someone outside the protected class. *Goldberg,* 836 F.2d at 849. The plaintiff's prima facie case creates a presumption of discrimination, which the defendant must rebut with evidence that it had a legitimate, non-discriminatory reason for the action. *Lovelace,* 681 F.2d at 239. If the defendant successfully rebuts, the plaintiff must counter with evidence that the defendant's non-discriminatory reason is mere pretext. *Id.* at 240.

In this case there is no dispute regarding the first two elements of the prima facie case. Goodship was in a group protected by the ADEA and she was discharged.

■ As to the third element, Goodship submits copies of her annual performance evaluations which consistently rate her performance as satisfactory or more than satisfactory. *See* Plaintiff's Memorandum in Opposition, Yurek Depo., Exh. 6–9. The Court notes that the standards for granting tenure may be higher than the standards for rating the performance of contract teachers. However, a plaintiff's evidence need not be conclusive in order to make a prima facie case. Goodship's performance evaluations tend to show that she was performing in accordance with legitimate expectations.

As to the final element of a prima facie case, Goodship offers the statement of the University that it planned to seek someone else to do her work. *See* Plaintiff's Memorandum in Opposition, Yurek depo., Exh. 16,

University of Richmond Department of Education Annual Report for 1992–1993, at 6 ("A faculty search will need to be conducted to find a replacement for Dr. Goodship.") However, she offers no evidence that the replacement was outside the protected age group, or that the University targeted its search to avoid the protected age group. Therefore, Goodship has failed under the alternate proof scheme to make a prima facie case, and therefore has failed to create the presumption that but for an intent to discriminate on the basis of age, the University would have granted her tenure.

However, even assuming, *arguendo,* that Goodship makes a prima facie case, the University successfully rebuts any presumption of discriminatory intent with evidence showing that Goodship's tenure denial and subsequent non-renewal were due to her deficient scholarship and research. A number of University evaluators found her scholarship and research to be deficient, and cited specific deficiencies. *See* Defendant's Memorandum in Support, Bowen Affid., Exh. 3, 6–12, 14. The evidence also shows that concern over her scholarship and research was longstanding. The current Department Head, Elaine Yurek, apparently noted concern about Goodship's research accomplishments at the time Goodship was hired, and Dean Leary expressed similar concern to Goodship in 1990. The University has alleged and supported a legitimate, non-discriminatory reason for it actions, and has successfully rebutted the presumption of discriminatory intent.

Goodship attempts to show that the University's reason is pretextual by offering her own assessment that her research was satisfactory and the assessment of a purported expert, not affiliated with the University, that Goodship's research is "generally acceptable and certainly not deficient." Plaintiff's Memorandum in Opposition, Affid. of Vacca. The Court notes that unanimity of opinion is rarely encountered in university-level scholarship. The opinions of Goodship and her expert are undoubtedly genuine, but they simply have no bearing on whether the different opinions expressed by numerous University faculty members were *not* genuine.

Goodship also contends that the comment by Cobbs about her age, which Cobbs entered into her personnel file at the time she was hired, show that age was a factor in the decision to deny tenure, resulting in non-renewal of her teaching contract. However, this comment was made six years before the tenure decision. Goodship makes no claim that she was ill-treated in the interim. The comment shows that age might have been a factor at the time of hiring, but it was certainly not determinative—Goodship was hired. Goodship offers no evidence connecting this comment with the negative evaluations of her research by other faculty members during the tenure review process six years later, nor does she offer evidence showing that the University's reliance on those evaluations was pretextual.

Goodship also points to the University's early retirement program, an alleged climate favoring youth, and her history of satisfactory performance reviews. The early retirement plan, without a great deal more, is not evidence of discrimination. On the contrary, such a plan gives older workers an option unavailable to younger workers. Goodship offers evidence that others perceived a climate favoring youth, but does not offer facts connecting those perceptions to anything the University said or did. Finally, a record of satisfactory performance ratings as a contract teacher is not necessarily sufficient to warrant tenure, and a denial of tenure is itself a legitimate, non-discriminatory reason to terminate a contract employee.

Therefore, the Court determines that Goodship has failed to show discriminatory intent under the alternative proof scheme.

Goodship also argues, however, that her direct and circumstantial evidence of discriminatory motive is sufficient to withstand summary judgment. She points to the totality of her evidence—the University's early retirement program, an alleged climate favoring youth, her history of satisfactory performance reviews, and the comment regarding her age written in 1987 by Bruce Cobbs in her personnel file. For reasons already discussed, these facts, even if true, do not show that the University intended to discriminate based on age in relying on faculty assess-ments during the tenure review process. The assessments are documented and give specific, non-discriminatory bases for recommending denial of tenure. The University's reliance on the assessments is entirely consistent with the ordinary course of events in tenure decisions. Goodship offers nothing to show that these assessments were somehow rigged by the University.

The direct and circumstantial evidence offered by Goodship, even if accepted as true, does not support a factual determination that, but for her age, the University would have granted her tenure. Therefore, the Court will grant summary judgment for the University on the age discrimination claim.

Relative to her discrimination claim, Goodship has moved to compel discovery of University personnel files which include confidential assessments of faculty by their peers. The Court has reviewed these files *in camera* and has determined that they contain no facts which are useful to Goodship's claim or which are likely to lead to useful information. Therefore, in order to protect the privacy rights of persons not involved in this litigation, the Court will deny the motion.

Goodship has also moved to voluntarily dismiss without prejudice her claims of gender discrimination and retaliation in violation of Title VII, representing that the parties had reached agreement as to such dismissal. The University having failed to oppose the motion, the Court will grant it.

The remaining claim for breach of contract is a matter of state law. Because the state contract claim and the federal discrimination claim derive from a common nucleus of operative fact, so as to permit the conclusion that the two claims comprise one case, this Court has the power to exercise jurisdiction over the state claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Whether the Court should exercise its power is a discretionary matter, guided by "considerations of judicial economy, convenience and fairness to litigants; ... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them as surer-footed read-

ing of applicable law. Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1138 (citations and footnotes omitted).

The Court finds no judicial economy in allowing this pendant state claim to go to trial in a federal court. The Court will dismiss the state claim without prejudice.

An appropriate order shall issue.

### FINAL ORDER

Upon due consideration, for the reasons given in the accompanying Memorandum this date filed and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED as follows:

1.  Defendant's motion for summary judgment is GRANTED in part, as to Plaintiff's age discrimination claim; and DENIED in part, as to Plaintiff's contract claim.

2.  Plaintiff's motion for summary judgment is DENIED.

3.  Plaintiff's contract claim is DISMISSED without prejudice.

4.  Plaintiff's motion to voluntarily dismiss claims under Title VII is GRANTED.

Let the Clerk send a copy of this Order to all counsel of record.